No. 85-04

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

NEAL PAXSON and FLORA PAXSON,

    Plaintiffs and Respondents,

-vs-

ALDEN F. RICE,

    Defendant and Appellant.

_____

APPEAL FROM:   District Court of the Sixteenth Judicial District,
               In and for the County of Garfield,
               The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sandall, Cavan, Smith, Howard & Grubbs; Timothy Cavan
        argued, Billings, Montana

    For Respondents:

        Brown & Huss; George W. Huss argued, Miles City,
        Montana

_____

                    Submitted: June 25, 1985

                      Decided: September 10, 1985

Filed: SEP 10 1985

_Ethel M. Harrison_
_____
                Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Default judgment was entered against Alden Rice in the Sixteenth Judicial District, Garfield County, on March 22, 1984. Rice moved to vacate the judgment on March 30, 1984. Following hearing on April 18, 1984, the judge denied the motion to vacate and ordered another hearing on the amount of damages. At the damages hearing on August 14, 1984, the court renewed the $40,000 judgment. Rice appeals. Neal and Flora Paxson, the parties obtaining judgment, challenge this Court's jurisdiction on the grounds that this appeal is untimely. We hold that the appeal is timely and affirm the District Court.

Rice raises two issues:

1. Did the District Court err in refusing to vacate the default judgment?

2. Did the District Court err in refusing to allow evidence that mitigated damages?

Alden Rice did construction work in Jordan, Montana. In October 1983 Neal and Flora Paxson sued Rice for breach of contract, breach of the implied warranty of habitability, negligent construction, and bad faith. They sought $50,000--$30,000 repairs, $5,000 substitute housing, $5,000 inconvenience, and $10,000 punitive damages. Rice was served on October 11, 1983, and his attorney filed a motion to dismiss on October 28, 1983. This unbriefed motion was denied on December 16, 1983. No answer was filed within twenty days.

The Paxsons' attorney, George Huss, wrote three letters to Rice's attorney, Robert Morin, on January 18, February 14,

2

and February 23, 1984, urging Morin to answer or he would seek default. Huss filed a notice of intent to enter default on March 5, 1984, and gave eleven days notice although only required to give three days notice. On March 15, 1984, Morin told Huss he would mail the answer that day but did not do so. A judgment by default for $40,000 was entered without hearing March 22, 1984.

On March 30, 1984, Morin filed a motion to vacate the default. The grounds stated for vacating were that during this time Morin was leaving the Berger Law Firm and his inattention was excusable neglect and mistake. The District Court heard and denied the motion in April and ordered an evidentiary hearing on the amount of damages.

After this hearing the District Court upheld the default judgment and renewed the $40,000 judgment on August 14, 1984. Rice filed a notice of appeal on September 12, 1984.

## Timeliness of Appeal

Before considering the substantive issues, we will discuss why this appeal is timely. The relevant statute is Rule 55(b)(2), M.R.Civ.P.:

> "In all other cases the party entitled to a judgment by default shall apply to the court therefor; . . . If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the state of Montana." (Emphasis added.)

A Rule 55(b)(2) hearing must be held on unliquidated damages, and logically the hearing should be held before a

3

judge enters the amount of damages in a default judgment. In this case the District Court entered default judgment for $40,000, refused to vacate the default, then had a hearing on the amount.

Rice's motion to vacate was denied April 18, 1984; the $40,000 judgment was renewed August 14, 1984; and this appeal was filed September 12, 1984. To be a timely appeal the August, not the April, order must constitute the final judgment. The finality of the judgment depends on whether a damages hearing was mandatory or discretionary. Smotherman v. Christianson (1921), 59 Mont. 202, 195 P. 1106, required a hearing to determine unliquidated damages. In this case a hearing was mandatory because the damages were unliquidated. Therefore, the April order could not be final. Montana and federal rules are identical, and many federal cases require the hearing before determining the amount of judgment.

> "It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." Davis v. Fendler (9th Cir. 1981), 650 F.2d 1154, 1161.

The fact that a judge, not a clerk, entered the default judgment does not negate the need for a hearing on damages. A clerk may enter a default when the claim is for a sum certain under Rule 55(b)(1), M.R.Civ.P., and for that a hearing is not required. Except for the narrow circumstances of Rule 55(b)(1), judgment by default can only be entered by a judge. This does not mean a judge can enter a default judgment for unliquidated damages without a hearing. The judge has nothing on which to base the amount of judgment. A defaulting party loses his defenses against the claim, but the claim should only be for the amount of damages actually

4

suffered. We hold that the judgment of August 14, 1984, was the final judgment here, and appeal from that judgment was timely taken.

Issue 1--Error in refusing to vacate the default judgment?

In Lords v. Newman (Mont. 1984), 688 P.2d 290, 41 St.Rep. 1793, we stated the standard of review where a District Court has refused to set aside a default:

> ". . . [W]here the trial court has refused to set aside the default, the proper standard of review is that no great abuse of discretion need be shown to warrant a reversal. . . . It is clear that the issue of abuse of discretion must be decided on a case-by-case basis." Lords, 688 P.2d at 294.

The general rule is that the neglect of an attorney is attributable to his client so that mere attorney neglect is insufficient to set aside a default. However, we recognized in Lords that we have found attorney neglect excusable on the part of the client upon the proper showing. Lords, 688 P.2d at 295. Therefore, in reviewing the decision of the lower court we need not find a great abuse of discretion, but we must find some abuse and a proper showing to excuse neglect in order to set aside the default.

In Lords the attorney had totally abandoned his clients and this Court concluded that it would be unconscionable to charge the client with the attorney neglect. We held that the trial court abused its discretion in not setting aside the default where the attorney completely abandoned the clients who had diligently tried to correct the court's action. Lords, 688 P.2d at 296.

The facts in the present case are distinguishable from Lords. In Lords, the attorney abandoned his clients after he made a general appearance on behalf of some of the clients

5

who had not been served with process and had not authorized such general appearance. In the present case, we find a continuing effort on the part of the attorney for plaintiffs to obtain an answer from defendant's attorney, Morin. This included writing letters, filing notices and telephoning, all to no avail. However, Morin did not abandon his clients and leave the state. He received notices and talked on the phone on behalf of the clients, but failed to do anything in response to the numerous requests by opposing counsel. Moreover, once default had been entered on March 22, in eight days attorney Morin moved to vacate that default. As demonstrated in the telephone conversation of March 15, attorney Morin intended to file an answer, but again postponed the preparation and filing of that pleading. That procrastination is a type of neglect which is properly attributable to a client, and which we distinguish from the abandonment in Lords.

This is not a factual situation where reasonable minds might conclude that the conduct of attorney Morin was excusable. We find no abuse of discretion in the District Court's conclusion that the conduct was not excusable neglect. We affirm the action of the District Court in refusing to vacate the default judgment.

Issue 2--Error in refusing evidence at damages hearing?

Rice contends that the District Court did not allow evidence which mitigated damages. He correctly asserts that evidence that mitigates damages should be allowed. He cites Lindsey v. Drs. Keenan, Andrews & Allred (1946), 118 Mont. 312, 165 P.2d 804, for the rule that evidence mitigating damages may be introduced. In fact, the plaintiff has a

burden of showing a nexus between the default liability and the damages. Trans World Airlines, Inc. v. Hughes (2nd Cir. 1971), 449 F.2d 51, 70. Evidence that establishes a defense may also mitigate damages and that evidence should be admitted as relevant to damages.

Rice did not establish that evidence mitigating damages was excluded. The single incident he pointed to in his brief may be relevant to liability but its relevance to damages is not apparent. Liability was no longer an issue, so the evidence was excludable. Henry v. Sneiders (9th Cir. 1974), 490 F.2d 315, 318.

The judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

7